IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:08-CR-0218-03** |
| | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **ESPERANZA FERRER** | : | |

# M E M O R A N D U M

Before the court is Defendant Esperanza Ferrer's motion for severance joined by her co-defendant Ramon Ferrer. Esperanza argues that Rule 14 of the Federal Rules of Criminal Procedure requires that the court sever her trial from her husband Ramon's trial because a joint trial would prejudice her. The motion is ripe for disposition.

## I.        Background

A superseding indictment returned by a Grand Jury on July 30, 2008 charged that Esperanza and four co-defendants, including Ramon,

> did intentionally and knowingly combine, conspire and confederate and agree with each other and with others both known and unknown to the Grand Jury to manufacture, distribute and possess with the intent to manufacture and distribute 500 grams and more of methamphetamine . . . and did attempt to manufacture, distribute and possess with intent to manufacture and distribute 500 grams and more of methamphetamine . . . .

(Doc. 93.)

The government has alleged that Esperanza played the following role in the alleged conspiracy.[1]  On April 29, 2008, Esperanza's husband Ramon engaged in negotiations in Ellijay, Georgia for the delivery of a significant quantity of methamphetamine in Pennsylvania.  (Doc. 144 at 2.)  On May 8, 2008, Esperanza and Ramon traveled to Pennsylvania in a car registered to Esperanza.  (*Id.*)  While in Pennsylvania, Esperanza and Ramon visited various truck stops.  (*Id.*)  Two days later, Esperanza and Ramon met with a confidential informant (the "CI") in a diner in Bethlehem, Pennsylvania.  (*Id.*)  During this meeting, Esperanza, Ramon, and the CI discussed the drug transaction.  (*Id.*)  Following the meeting, the CI provided Esperanza and Ramon a vehicle.  (*Id.*)  Upon receipt of the car, Ramon—in the presence of Esperanza— carried out extensive, lengthy, and thorough examinations of the trunk, engine, and underbody of the car at two separate times in different locations.  (*Id.*)  On May 15, 2008, Drug Enforcement Agency agents captured video surveillance of Esperanza transferring a bag containing six pounds of suspected methamphetamine from the car provided by the CI to her car.  (*Id.*)  On May 17, 2008, Esperanza, Ramon, and three other individuals were arrested and 23 pounds of a substance that field tested positive for methamphetamine was seized.  (*Id.*)  Subsequent chemical analysis revealed that the substance was not methamphetamine.  (*Id.*)

A criminal complaint was filed against Esperanza on May 19, 2008 (Doc. 11), and a Grand Jury returned an indictment on May 21, 2008 (Doc. 41).  On July 30, 2008, a Grand Jury returned a superseding indictment charging Esperanza

---

[1] The following facts are taken from the government's brief in opposition to Esperanza's motion for severance.  The facts are mere allegations.

and her co-defendants as described above.  (Doc. 93.)  On October 3, 2008,
Esperanza filed a motion for severance with a supporting brief.  (Docs. 137, 138.)
The government filed a brief in opposition on October 14, 2008.  (Doc. 144.)
Esperanza opted not to file a reply brief.  Accordingly, the motion is ripe for
disposition.

**II.**          **Legal Standard**

            Rule 14 of the Federal Rules of Criminal Procedure permits a court to
sever defendants' trials "[if] the joinder of offenses or defendants in an indictment,
an information, or a consolidation for trial appears to prejudice a defendant or the
government."  Fed. R. Crim. P. 14(a).  When defendants have been properly joined
under Rule 8(b), "a district court should grant severance under Rule 14 only if there
is a serious risk that a joint trial would compromise a specific trial right of one of the
defendants, or prevent the jury from making a reliable judgment about guilt or
innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v.
Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996).  In evaluating the risk of prejudice, courts
must consider "the facts in each case."  *Zafiro*, 506 U.S. at 539.  "When the risk of
prejudice is high, a district court is more likely to determine that separate trials are
necessary, but . . . less drastic measures, such as limiting instructions, often will
suffice to cure any risk of prejudice."  *Id.* (citations omitted).

            Federal courts have "a preference for joint trials of defendants who are
indicted together," *Voigt*, 89 F.3d at 1094, and Rule 8(b) encourages charging
multiple defendants in the same indictment or information "if they are alleged to
have participated in the same act or transaction or in the same series of acts or

transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). This preference is especially strong in conspiracy cases because "joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy." *Voigt*, 89 F.3d at 1094 (internal quotation marks omitted); *see also United States v. Provenzano*, 688 F.2d 194, 199 (3d Cir. 1982). This preference arises because joint trials "promote efficiency in the courts and serve the interests of justice by preventing 'the scandal and inequity of inconsistent verdicts,' " *Voigt*, 89 F.3d at 1094 (quoting *Zafiro*, 506 U.S. at 537). Nonetheless, as the Third Circuit has noted:

> [N]o defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials. The goal of the judicial process is not to decide cases as quickly and as inexpensively as possible.

*United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978).

Ultimately, however, "[d]efendants seeking a severance bear a 'heavy burden' and must demonstrate not only that the court would abuse its discretion if it denied severance, but also that the denial of severance would lead to a clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (citing *Zafiro*, 506 F.3d at 539) (internal quotation marks omitted); *see also United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). "Mere allegations of prejudice are not enough," *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir.1981), and courts will not grant severance merely because defendants "may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.

4

**III.**         **Discussion**

Esperanza argues that the court should grant her motion for severance for two reasons.  First, Esperanza argues that by denying the motion the court would place her in the position of having to choose between (a) testifying on her own behalf and (b) asserting the privilege against adverse spousal testimony.  Second, Esperanza argues that the government has presented a weak case against her as compared to the other five defendants, which creates a risk of spillover.  The court will review each of these arguments in turn.

   **A.**   **Privilege Against Adverse Spousal Testimony**

Esperanza argues that a joint trial would place her in the position of choosing between testifying on her own behalf and asserting her privilege against testifying against her husband Ramon.  Esperanza argues that by choosing to testify on her own behalf she would necessarily waive her privilege not to testify against Ramon, and may have to testify against him on cross-examination thereby incriminating him.  Esperanza argues that this is a Dobson's Choice.  *See United States v. Dobson*, No. CRIM. 02-616-06, 2003 WL 22427984, at *2 (E.D. Pa. Aug. 18, 2003) ("Severing proceedings to avoid a forced choice between the right to testify in one's own defense and the right not to testify adversely against a spouse is an appropriate procedural option to avoid the denial of substantive rights.") (unpublished).

The issue before the court arises from a conflict between a right and a privilege.  On the one hand, the Constitution guarantees a criminal defendant the fundamental right to testify at trial on his or her own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987); *United States v. Leggett*, 162 F.3d 237, 245 (3d Cir. 1998).

This right is "personal," and can be waived only by the defendant and only if done knowingly, voluntarily, and intelligently. *Leggett*, 162 F.3d at 245. On the other hand, federal courts recognize a "privilege against adverse spousal testimony, which prevents one spouse from being compelled to testify against the other [and] rests with the testifying spouse, who may choose to waive it." *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983). This privilege[2] was fashioned to protect marriage as it exists at the time of trial" and "applies to all testimony of any kind." *Id.* (quoting 2 Wright & Miller, Federal Practice & Procedure 2d § 406 (1983)). The privilege against adverse spousal testimony has deep common law roots, but is not a fundamental right and has been abolished by some states. *See, e.g.*, *Glover v. State*, 836 N.E.2d 414, 416–17 (Ind. 2005) (noting that the "spousal testimonial privilege is not recognized in Indiana law").

### 1.   Rejection of the *Dobson* Approach

Esperanza cites *United States v. Dobson* to support her contention that the court must grant severance when a defendant's fundamental right to testify conflicts with the privilege against adverse spousal testimony. *Dobson*, 2003 WL 22427984. The *Dobson* case involved a ninety-nine count indictment against ten defendants based on their involvement in a fraudulent enterprise. *Id.*, at *1. Among those ten defendants were a husband and wife each charged with one count of conspiring to commit mail fraud and three counts of mail fraud. *Id.* The husband moved for severance, arguing that "a joint trial would force him to compromise

---

[2] This privilege is distinct from, and should not be confused with, the "marital communications privilege," which prevents a testifying spouse from disclosing confidential communications between the spouses and reaches only those communications made in confidence and intended to be confidential." *Ammar*, 714 F.2d at 258.

either his right to testify in his own defense or his right not to provide testimony that may be adverse to his wife." *Id.*  The *Dobson* court granted the motion for severance, holding that "severance of [their] trial is justified to protect [the husband's] two fundamental rights: the first, to testify on his own behalf and the second, his right not to testify against his wife." *Id.*, at *2.

In reaching its holding, the *Dobson* court emphasized the tension between the two "fundamental rights"[3]  and relied on a Third Circuit dictum to reach a holding that appears to support the creation of a bright-line rule favoring severance when a defendant's privilege against adverse spousal testimony and right to testify conflict.  In *United States v. Ammar*, the Third Circuit affirmed a district court decision not to sever a trial and allowed a wife to testify about post-arrest conversations between spouses made in furtherance of a criminal conspiracy.  714 F.2d at 258.  The court found these communications unprotected by the "marital communications privilege." *Id.*  Unlike the privilege against adverse spousal testimony, the marital communications privilege only "prevents a testifying spouse from disclosing confidential communications between spouses" and "reaches only those communications made in confidence and intended to be confidential." *Id.* The marital communications privilege can only be waived by both spouses. *Id.*  As the *Ammar* court affirmed, the communications were in furtherance of criminal activity and therefore were not protected by the marital communications privilege. *Id.*  In reaching this holding, the court discussed the privilege against adverse spousal testimony in order to refute a misguided argument presented by a party to

---

[3] It should be noted, as stated above, the privilege against adverse spousal testimony is a privilege, not a fundamental right, and has even been abolished or rejected by some states. *See Glover*, 836 N.E.2d at 417.

the case.  *See id.*  The *Ammar* court holding, however, did not apply to the privilege against adverse spousal testimony.  *Id.*

Nonetheless, the *Dobson* court reasoned that *Ammar* stands for the proposition that district courts should resolve conflicts between the privilege against adverse spousal testimony and the right to testify "by severing the trials of spouses." *Dobson*, 2003 WL 22427984, at *2.  The court disagrees with the *Dobson* court's interpretation of *Ammar*.  The *Dobson* court seized on the *Ammar* court's dictum, "A severance may be granted for a co-defendant spouse, if necessary to protect his or her rights."  *Id.*; *Ammar*, 714 F.2d at 258.  The dictum related to the right to testify and aimed to clarify that "[t]estimony essential to a spouse's criminal defense must be permitted even if it discloses privileged communications."  *Ammar*, 714 F.2d at 258.  In other words, the *Ammar* dictum contemplated a situation where the fundamental right to testify trumps the marital communications privileges and instructed that severance may be appropriate to protect an individual spouse's right to testify on his or her own behalf at a criminal trial.  This situation contrasts vividly from the facts in *Dobson* where a defendant sought severance because testifying on his own behalf would waive his privilege against adverse spousal testimony.  In sum, this court rejects the *Dobson* court's reasoning and declines to adopt Esperanza's suggested bright-line rule in favor of severance anytime a perceived conflict between the right to testify and the privilege against adverse spousal testimony arises.[4]

---

[4] It should be noted that to date the *Dobson* court's characterization of the privilege against adverse spousal testimony as a "fundamental right" and apparent adoption of a bright-line rule regarding severance has been affirmatively utilized in one other case.

(continued...)

## 2.   **Fact Based Inquiry**

The court rejects the bright-line rule implied in *Dobson* in favor of a fact sensitive inquiry focused on whether failure to sever creates a serious risk that one of Esperanza's trial rights will be compromised.  Esperanza points to two conditions indicating that a serious risk exists.  First, Ramon "would be a material witness insofar as what Esperanza Ferrer knew and when she knew it, i.e. her guilt or innocense [sic]," and Ramon's counsel has indicated that Ramon "in a severed trial would testify favorably to Esperanza." (Doc. 138 at 3–4.)  Second, she claims her "right to testify in her own behalf (without incriminating her spouse) would likewise be affected if her case is not severed from her husband's."  (*Id.*)

The court does not find that either of these conditions suggest a serious risk that one of Esperanza's trial rights will be compromised.  First, Ramon's willingness to testify on behalf of Esperanza at a separate trial does not implicate one of Esperanza's trials rights let alone create a serious risk of compromising a trial right.  Second, the court in viewing the totality of the facts and circumstances cannot identify a basis on which Esperanza's right to testify on her own behalf will be compromised if the court accommodates the federal judiciary's preference for joint trials for defendants charged under a single conspiracy.

The government intends to present direct and circumstantial evidence of Esperanza's participation in the alleged conspiracy.  The circumstantial evidence

---

[4](...continued)

*See United States v. Ali*, No. CRIM. 04-cr-611-2, 2005 WL 697482, at *1–2 (E.D. Pa. March 24, 2005) (granting defendant's motion for severance "to ensure the preservation of her fundamental rights and the fairness of her trial").  Only one other court to date has relied on the holding in *Dobson*, and it distinguished *Dobson* and rejected the *Dobson* court's interpretation of Third Circuit case law.  *United States v. Binns*, No. 4:06-cr-220, 2007 WL 120706, at *7 (E.D. Mo. January 11, 2007).

against Esperanza includes (a) the road trip from Georgia to Pennsylvania with Ramon after he had engaged in negotiations for a drug transaction, (b) her accompaniment of Ramon as he visited several truck stops, and (c) her accompaniment of Ramon while he conducted significant examinations of the car given to Ramon by the CI.  The direct evidence against Esperanza includes (i) her presence during negotiations for a drug transaction in a restaurant and (ii) her transportation of a bag containing a significant quantity of purported methamphetamine from the vehicle provided by the CI to her vehicle.

Given this direct and circumstantial evidence, Esperanza may testify in one of only two manners.  As her first option, she may deny that she knew the purpose of the road trip involved anything illegal, she may testify that she did not know that Ramon's examination of the vehicles and surveillance of truck stops related to a criminal conspiracy, and she may testify that she did not know the contents of the bag she transported between the CI's vehicle and her own.  She may also deny that the drug negotiations with the CI in the restaurant took place or she may testify that although she was present during the conversation she had spaced out to the point at which she was completely oblivious to the fact that Ramon was negotiating a drug deal.  As a second option, Esperanza could testify that she did have knowledge of one or all of these things.

Considering these limited options, Esperanza has failed to satisfy the burden of showing there is a serious risk that her right to testify will be compromised.  To begin with, the court does not believe that Esperanza would actually take the stand and admit to knowledge of any aspect of the conspiracy, because to do so would amount to an admission of guilt on the stand by the

10

defendant—an unwise course of action for any criminal defendant.  Second, if she had no knowledge of the conspiracy, then very little risks exists that she will choose not to testify in order to avoid incriminating her husband.  At most, she could testify very generally that, for example, Ramon drove from Georgia to Pennsylvania, took her to several truck stops, borrowed a car from an acquaintance and inspected it multiple times, had an ordinary meal at a diner with her and an acquaintance, and asked her to move a bag from his acquaintance's car to her car.  Nearly all of this evidence was recorded by video or observed by DEA Agents or the CI.  Under this scenario, there could be no testimony regarding the conspiracy.  Accordingly, the risk seems insignificant that Esperanza will not testify to exculpate herself in order to avoid the possibility of testifying to basic facts that have been recorded or witnessed by law enforcement agents.  Esperanza has not met her burden.

### B.   <u>Spillover</u>

Severance is also appropriate where there is a serious risk a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *Voigt*, 89 F.3d at 1094.  Esperanza contends that "the government contemplates a joint trial involving five defendants, the evidence is obviously much weaker against [her] than it is against the other defendants based on the government's own criminal complaint and there is risk of spillover that likewise militates in favor of severance." (Doc. 138 at 5.)  As a general rule, courts will not find prejudice "just because all evidence adduced is not germane to all counts against each defendant."  *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).  "Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance."

*Id.*  The fact that the case against Esperanza is "obviously much weaker" or that she may have played a less significant role in the alleged conspiracy does not support severance.  Accordingly, the court will not grant Esperanza's motion for severance on this ground.

**IV.**          **Conclusion**

          In accordance with the foregoing discussion, the court will deny Esperanza's motion for severance.


                                                  s/Sylvia H. Rambo
_____   SYLVIA H. RAMBO
                                                  United States District Judge

Dated:  November 12, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:08-CR-0218** |
| | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| | : | |
| **ESPERANZA FERRER** | : | |
| | : | |

## O R D E R

          In accordance with the foregoing discussion, **IT IS HEREBY**

**ORDERED** that Defendant Esperanza Ferrer's motion for severance is **DENIED**.


                                             s/Sylvia H. Rambo
                                             SYLVIA H. RAMBO
                                             United States District Judge

Dated:  November 12, 2008.